JOHN B. BUTLER, LEVI REYNOLDS, JUNIOR, AND WILLIAM OVERFIELD, LATE BOARD OF CANAL COMMISSIONERS OF PENNSYLVANIA, PLAINTIFFS IN ERROR, *v.* THE COMMONWEALTH OF PENNSYLVANIA.

In 1836, the State of Pennsylvania passed a law directing Canal Commissioners to be appointed, annually, by the Governor, and that their term of office should commence on the 1st of February in every year. The pay was four dollars *per diem.*
In April, 1843, certain persons being then in office as Commissioners, the legislature passed another law, providing amongst other things, that the *per diem* should be only three dollars, the reduction to take effect upon the passage of the law; and that, in the following October, Commissioners should be elected by the people.
The Commissioners claimed the full allowance during their entire year, upon the

ground that the State had no right to pass a law impairing the obligation of a contract.

There was no contract between the State and the Commissioners, within the meaning of the Constitution of the United States.

THIS case was brought up from the Supreme Court of Pennsylvania, by a writ of error issued under the twenty-fifth section of the Judiciary Act.

The object was to test the constitutionality of an act passed by the legislature of Pennsylvania, on the 18th of April, 1843, entitled " An Act to reduce the expenses and provide for the election of the Board of Canal Commissioners." The allegation was, that the act was repugnant to the Constitution of the United States.

The plaintiffs in error were, on the 1st of February, 1843, severally appointed and commissioned by the Governor of Pennsylvania to be Canal Commissioners for one year, by separate commissions from the Governor, all of similar tenor and date, of one of which the following is a copy : —

" PENNSYLVANIA, SS.

" David R. Porter, Governor of the said Commonwealth, to John B. Butler sends greeting :

" Whereas, in and by an act of the General Assembly of this Commonwealth, passed the 28th day of January, 1836, the Governor is empowered and required, on or after the first day of February, 1836, and annually thereafter, to appoint three Canal Commissioners, and, in case of vacancy, to supply the same by new appointments, whose powers, duties, and compensation shall be the same as those of the (then) present board, and shall commence on the first day of February, 1836, and on the first day of February annually thereafter, and whose term of service shall continue for one year :

" Now, therefore, be it known, that, having full confidence in your integrity and ability, I, the said David R. Porter, Governor of said Commonwealth, in pursuance of the power and authority to me by law given, have, and by these presents do, appoint you, the said John B. Butler, to be a Canal Commissioner for the term of one year from the day of the date of these presents, if you shall so long behave yourself well. Hereby giving and granting to you, in conjunction with the other Commissioners, all the rights, powers, and emoluments of the said office, and authorizing and requiring you to unite with the said Commissioners in the execution and performance of all the duties of a Canal Commissioner, agreeably to the several laws of this Commonwealth.

" Given under my hand and the great seal of the said Commonwealth, &c., the first day of February, A. D. 1843."

This appointment was made in pursuance of the act of Assembly passed 6th April, 1830 (Pamphlet Laws, p. 218; Internal Improvement Laws, p. 65), and of the act of 28th January, 1836 (Pamphlet Laws, 23; Int. Imp. Laws, 145).

The first of these acts (§ 1) provides, " That on or before the first Monday of June next, and annually thereafter, the Governor shall appoint three Canal Commissioners, and, in case of vacancy, supply the same by new appointments, whose powers and duties shall be the same as those of the present board, and shall commence on the first Monday in June, and shall continue in office for one year, and who shall receive, as a full compensation for their services and expenses, the sum of four dollars each per day," &c.

The second act provides, " That it shall be the duty of the Governor, on or after the first day of February next (1836) and annually thereafter, to appoint three Canal Commissioners, and in case of vacancy supply the same by new appointments, whose powers, duties, and compensation shall be the same as the present board, and shall commence on the 1st of February next, and whose term of service shall continue for one year," &c.

On the 18th day of April, 1843, the legislature of Pennsylvania passed an act in the following words, to wit:—

" An Act to reduce the expenses and provide for the election of the Board of Canal Commissioners.

" § 1. Be it enacted by the Senate and House of Representatives of the Commonwealth of Pennsylvania in General Assembly met, and it is hereby enacted by the authority of the same, That, at the next annual election, the qualified voters of the several counties of this Commonwealth shall vote for three persons as Canal Commissioners, who shall perform all the duties now by law enjoined upon the Canal Commissioners of this Commonwealth; the persons so elected shall decide by drawing from a box ballots numbered one, two, and three, which of them shall hold his office one, which two, and which three years; the Commissioner who shall draw the ballot numbered three shall hold his office three years; he who shall draw the ballot numbered two shall hold his office two years; and the other shall hold his office one year; on the second Tuesday in October in each year thereafter, there shall be elected one person as Canal Commissioner, who shall hold his office for three years; the elections of Canal Commissioners shall be conducted by the officers authorized by law to conduct the general elections in the several election districts; a return of the votes given for said office shall be made to the Secretary

of the Commonwealth, in the manner now provided for the transmission of returns of elections of Representatives; the Secretary of the Commonwealth, on receipt of all the returns, shall notify the persons so elected, who shall enter upon the duties of their office on the second Tuesday in January succeeding their election; if any vacancy shall occur in the said Board of Canal Commissioners by death, resignation, or otherwise, the Governor shall appoint a suitable person to supply the vacancy until the next general election, when a person shall be elected for the unexpired term of him whose death, resignation, or removal shall have caused a vacancy; and that the pay of the said Canal Commissioners, as well as the present Canal Commissioners, from and after the passage of this act, shall each be three dollars per day."

The remaining sections are omitted, as relating to the subordinate officers.

At the annual election in October, 1843, three gentlemen were elected Canal Commissioners, who, on the 9th of January, 1844, assumed upon themselves the duties of the office to which they had been elected.

The plaintiffs in error continued in the exercise of the duties of the office until the said 9th day of January, 1844, and were ready and willing to serve out the balance of the term for which they were commissioned, but were then superseded by the persons elected in October 1843, pursuant to the said statute of 18th April, 1843.

On the 22d of March, 1844, the Auditor-General and State Treasurer settled the accounts of the plaintiffs in error, as late Canal Commissioners, in which they allowed them each $4 per day from 1st February, 1843, to 18th April, 1843, inclusive, and $3 per day from 18th April, 1843, to 8th January, 1844, resulting in a balance due the Commonwealth of $1,071.

From this settlement the plaintiffs in error appealed to the Court of Common Pleas of Dauphin County, pursuant to the provisions of the act of Assembly.

The cause came on for trial in the Common Pleas of Dauphin County, on the 25th of October, 1847, when the foregoing facts were given in evidence, when the court charged the jury as follows : —

" The defendants were appointed Canal Commissioners for the term of one year, commencing on the first day of February, 1843, at which time their compensation was fixed by law at four dollars per day. On the 18th of April, 1843, the legislature, by an act entitled ' An Act to reduce the expenses, and provide for the election of Canal Commissioners ' (Pamphlet

Laws of 1843, p. 337), reduced the pay of Canal Commission-ers from four to three dollars per day. The Auditor-General and State Treasurer settled the accounts of the Canal Com-missioners in pursuance of this act. The Canal Commission-ers contend that this act is unconstitutional, so far as it relates to reducing their pay after their appointment to office; and this is the only question that is presented in this case. The court instruct the jury that the act in question is not uncon-stitutional; and, as there is no other dispute, they should find for the Commonwealth. To this charge the defendants' coun-sel excepts; and it is filed at their request.

　　　　　　　　　　　　　　　" N. B. ELDRED, *Pres. Judge.*"

The jury, under this charge, found a verdict in favor of the Commonwealth for $ 1,301.26, the amount stated to be due from the plaintiffs in error by the Auditor-General and State Treasurer, with interest accrued thereon.

The Commissioners carried the case to the Supreme Court of Pennsylvania, which, on the 30th of June, 1848, affirmed the judgment of the Court of Common Pleas.

A writ of error brought the case up to this court.

It was argued by *Mr. J. M. Porter*, for the plaintiffs in error, and *Mr. Alricks*, for the defendant in error.

*Mr. Porter*, for the plaintiffs in error, made the following points : —

That the Supreme Court of Pennsylvania erred in affirming the judgment of the Court of Common Pleas of Dauphin County, in that State, at the suit of the defendant in error against the plaintiffs in error, as the act of Assembly of the Commonwealth of Pennsylvania, passed upon the 18th day of April, 1843, entitled " An Act to reduce the expenses and pro-vide for the election of the Board of Canal Commissioners," was unconstitutional and void; because, —

1. The plaintiffs in error were severally commissioned, ac-cording to the constitution and laws of Pennsylvania, to hold the office of Canal Commissioner for one year from 1st February, 1843, when their compensation was fixed at $ 4 per day, and they could not be legislated out of office, if at all, before 31st January, 1844, when their commissions and the tenures of their offices would expire, and therefore they contin-ued legally in office until the last-mentioned day, and were en-titled to be paid, at the rate of $ 4 per day, up to that time.

2. That if they could be legislated out of office before 31st January, 1844, their compensation, as fixed by law when they entered upon the duties of the office, could not be changed without their consent during their continuance in office.

3. That the said act of Assembly, referred to in the charge of the president of the Court of Common Pleas, and which the Supreme Court of Pennsylvania held to be constitutional and binding on the plaintiffs, was a violation of the Constitution of the United States, and transcended the powers of legislation possessed by the legislature of Pennsylvania, in so far, at least, as regarded the pay and tenure of office of the plaintiffs in error, who were in office for a fixed term, and at a fixed compensation, at the time of its passage.

*Mr. Porter* contended that the acceptance, under the law of 1836, by the Commissioners, constituted a contract with the State, and quoted largely from Paine's Dissertation on Government, Vol. I. p. 365, to show what species of laws created contracts. He then cited and commented on the following cases: 7 Watts & Serg. 127; 4 Barr, 49; 6 Serg. & Rawle, 322; 2 Rawle, 369; 5 Serg. & Rawle, 460; 3 Serg. & Rawle, 145.

In Marbury *v.* Madison, 1 Cranch, 137, the Supreme Court of the United States held, that, "where the officer is not removable at the will of the executive, the appointment is not revocable, and cannot be annulled. It has conferred legal rights, which cannot be resumed." "The discretion of the executive is to be exercised until the appointment has been made; but having once made the appointment, his power over the office is terminated in all cases, where by law the officer is not removable by him. The *right* to the office is then in the person appointed," &c.

"Mr. Marbury, then, since his commission was signed by the President and sealed by the Secretary of State, was appointed, and as the law creating the office gave the officer a right to hold for five years, independent of the executive, the appointment was not revocable, but vested in the officer legal rights, which are protected by the laws of the country."

Therefore, both on principle and precedent, we contend, —

1. That the tenure of the defendants in the office could not be determined before the expiration of the time limited in their commissions, to wit, 1st February, 1844, and that they were entitled to their pay up to that time;

2. That if their tenure could not be thus terminated, their compensation could not be changed until it was so terminated, without their consent; and hence,

3. The act of 1843, so far as it attempted to accomplish that object, was unconstitutional.

And in reference to these points, and to show that this construction of the Constitution and laws is reasonable, it may be remarked: —

These Commissioners are not local officers. They are taken

from various parts of the State. In the present instance, one is taken from Pittsburg, Alleghany County, at nearly the extreme west; one from Lewistown on the Juniata, about the centre, and one from Monroe County, on the Delaware, at the extreme northeast of the Commonwealth. They are called from their homes and of course have made the arrangements for their private business for a year, — from their contracts in relation to which no law to be passed by the legislature could absolve them. Yet it is urged that the legislature can alter the contract, as to both tenure and compensation, into which the Commonwealth has entered with them, when an individual cannot do it. Fareira *v.* Sayres, 5 Watts & Serg. 210.

Is this carrying out the idea, that a republic is *a government of justice*, in contradistinction to a despotism, which is said to be, and is, *a government of will?*

There is also a class of cases which bear upon this question, of the faith which a government is bound to observe in its contracts. It is the case of private corporations, in regard to which it has been held, that the acts of assembly creating such corporations create, when accepted by the corporators, a contract, from the obligation of which the government cannot be absolved, and the terms of which the government cannot alter, but by consent. Dartmouth College *v.* Woodward, 4 Wheat. 627; Lincoln and Kennebeck Bank *v.* Richardson, 1 Greenl. 79; Monongahela Nav. Co. *v.* Coon, 6 Barr, 379; Terrett *v.* Taylor, 9 Cranch, 52; Green *v.* Biddle, 8 Wheat. 1; Wales *v.* Stetson, 2 Mass. 146; 2 Kent's Com. 306; State *v.* Tombeckbee Bank, 2 Stew. 30; Nichols *v.* Bertram, 3 Pick. 342; Derby Turnpike Co. *v.* Parks, 10 Conn. 522; Turnpike Co. *v.* Phillips, 2 Pa. Rep. 184; Pingry *v.* Washburn, 1 Aik. 264; and Ehrenzeller *v.* Union Canal Co., 1 Rawle, 189.

And this rule applies as well to powers implied as those expressed. People *p.* Manhattan Co., 9 Wendell, 351.

In Fletcher *v.* Peck, 6 Cranch, 87 – 148, the celebrated Yazoo case, C. J. Marshall, at page 132, says: "The legislature of Georgia was a party to the transaction, and for a party to pronounce its own deed invalid, whatever cause may be assigned for its invalidity, must be considered as a mere act of power which must find its vindication in a train of reasoning not often heard in a court of justice." S. P. The People *v.* Platt, 17 Johns. 195; Bowdoinham *v.* Richmond, 6 Greenl. 112.

Is not the case of a person appointed to office, entering upon its duties, quitting his other pursuits, just as strong and powerful an illustration of the necessity of the State preserving its faith in its contracts and stipulations with him, as it would be in the case of a grant of land, or of corporate rights?

The case is one where the office is conferred for a fixed and definite period, one year; the compensation fixed by law. The attempt is to abridge the term and reduce the compensation. Every sense of justice and propriety seems shocked at this attempt to execute a "mere act of power."

*Mr. Alricks*, for the defendant in error, made the following points : —

1st. That the office of Canal Commissioner is the creature of the legislature, under the power given them as representatives of the people, in the eighth section of the sixth article of the amended constitution of Pennsylvania, and in the absence of any constitutional restraint it is defeasible and subordinate to the will of the legislature. "All officers whose election or appointment is not provided for in this constitution shall be *elected* or appointed as shall be directed by law." It is therefore respectfully contended, on behalf of the people, that the manner in which the appointments were to be made, the term of service and pay of the Canal Commissioners, were subjects left unconditionally with the legislature. The power to create and then abolish the office, to increase or diminish the salary, to enlarge or curtail the tenure, was placed absolutely and unreservedly in their province.

After illustrating this position at some length, *Mr. Alricks* proceeded to show that this was not a case of contract. The act of the legislature is a peremptory rule of action, prescribing *as law* the course in which the executive must proceed. In it we find the representatives of the people, in the due exercise of the law-making power, directing the chief magistrate of the Commonwealth to appoint Canal Commissioners, thus conferring on him the prerogative of appointment, subject to the implied reservation of all inherent power necessary to the administration of the government. In the words of the chief justice of this court in a like case, State of Maryland *v.* Baltimore and Ohio Railroad Co., 3 Howard, 552, "The language of the law is not the language of contract, but is evidently mandatory and in the exercise of legislative power." "The statute is *pro tanto* a repealing one, which offers no express compact to any one, and such a compact is never to be implied." Per C. J. Gibson, Monongahela Navigation Co. *v.* Coons, 6 Watts & Serg. 113. "The State is not presumed to have surrendered a public franchise in the absence of an unequivocal intention so to do." The Charles River Bridge *v.* The Warren Bridge, 11 Peters, 420. The present plaintiffs were forced to assume the untenable position just combated; but look in vain to the statute for countenance.

2d. Services rendered by public officers, in obedience to their appointments, have no affinity to contracts, nor do public laws, nor commissions authorizing citizens to exercise particular offices, amount to contracts. In affecting to treat them as such consists the great error of the late Canal Board. Commissions bear no analogy to contracts. There is no mutuality nor obligation on the appointees to accept, and if they do accept, they are not bound to serve out their time, but they may dissolve the relation *ad libitum*.

A contract is defined to be " an agreement between two or more persons, upon a sufficient consideration, to door not to do a particular thing." There was no agreement on the part of the present plaintiffs to serve for a year, nor was there any law compelling them to serve longer than it was their pleasure, and no penalty was incurred if they refused to accept. This, we think, furnishes a triumphant answer to the labored and learned argument which has been drawn from the supposed inconvenience and hardship of the position of the present plaintiffs, whose official lives were placed at the mercy of the legislature. The premises are unsound. There was no hardship, because there was no obligation on the part of any citizen to accept, or, after accepting, to hold the office. They had power to take it up, and had " power to lay it down." Whoever did accept were bound or presumed to know that the law placed the office and the emoluments absolutely at the will of the legislature. There are certain penalties annexed to a refusal to serve in many of the subordinate offices in Pennsylvania, and yet it has never been supposed that the addition or annexation of a fine for not serving prevented the legislature from regulating the fees of those officers, — by the by, infinitely stronger cases for invoking the exercise of the rule relied upon than is this case.

In the Commonwealth *v.* Bacon, 6 Serg. & Rawle, 322, this question is determined in an able opinion, delivered by the late Justice Duncan : — " These services, tendered by public officers, do not, in this particular, partake of the nature of contracts, nor have they the remotest affinity thereto. As to stipulated allowance, the allowance, whether annual, *per diem*, or particular fees for particular services, depends on the will of the lawmakers. This has been the universal construction, and the constitution puts this question at rest in the provision for the salary of the Governor and judges. . . . . . These provisions are borrowed from the Constitution of the United States. It is apparent that the compensation of the governor and these judges is matter of constitutional provision ; that of all other officers is left open to the legislature. The allowance, the compensation, the salary, the fees of all other officers, and

members of the legislature, depend on the legislature, who can and who do change them, from time to time, as they conceive just and right."

Commonwealth *v.* Mann, 5 Watts & Serg. 418: " The point that it is a contract, or partakes of the nature of a contract, will not bear the test of examination."

Barker *v.* City of Pittsburg, 4 Barr, 51: " That there is no contract, express or implied, for the permanence of a salary, is shown by the constitutional provision for the permanence of the salaries of the Governor and judges as exceptions."

3d. All commissions (regardless of their form, or by whom issued) contain, impliedly, the *constitutional* reservation, that the people at any time have the right, through their representatives, to alter, reform, or abolish the office, as they may alter, if they choose, the whole form of government. In our *magna charta* it is proclaimed (2d section of the Bill of Rights, under the 9th Article of the Constitution of Pennsylvania), that " all power is inherent in the people, and all free governments are founded on their authority, and instituted for their peace, safety, and happiness ; for the advancement of these ends they have at all times an unalienable and indefeasible right to alter, reform, or abolish their government, in such manner as they may think proper." It has been well said, by one of the ablest judges of the age, that " a constitution is not to receive a technical construction, like a common law instrument or a statue. It is to be interpreted so as to carry out the great principles of the government, not to defeat them." Per Gibson, C. J. in Commonwealth *v.* Clark, 7 Watts & Serg. 133.

The first section of the act of 1843, under which this controversy has arisen, entitled " An Act to reduce the expenses and provide for the election of the Board of Canal Commissioners," declares, " That, at the next annual election, the qualified voters of the several counties of this Commonwealth shall vote for three persons as Canal Commissioners, who shall perform all the duties now enjoined by law on the Canal Commissioners of this Commonwealth ; . . . . . who shall enter upon the duties of their office on the second Tuesday in January succeeding their election ; . . . . . and that the pay of the said Canal Commissioners, as well as the present Canal Commissioners, from and after the passage of this act, shall each be three dollars per day."

Whether this act was politic or impolitic, certainly the legislature neither transcended their power, nor violated any contract made or authorized by them.

*Mr. Alricks* then proceeded to comment on the Pennsylvania authorities of 6 Barr, 80 ; 10 Ib. 442.

The right to *graduate the emoluments of office* is an *element of sovereignty;* and the reasoning of the late Chief Justice Marshall, in the Providence Bank v. Billings, 4 Peters, 514, applies with equal force to the case under consideration.

The taxing power is of vital importance, and essential to the existence of the government. " As the whole community is interested in retaining it undiminished, that community has a right to insist that its abandonment ought not to be presumed, in a case in which the deliberate purpose of the State to abandon it does not appear."

There is a numerous class of cases to the same effect. The Portland Bank v. Apthorp, 12 Mass. 252; 1 Hill, 616; 2 Hill, 353; 25 Wendell, 686; The State v. Franklin Bank, 10 Ohio, 91; State v. Mayhew, 2 Gill, 487. " In grants by the public, nothing passes by implication." United States v. Arredondo, 6 Peters, 738; Jackson v. Lamphire, 3 Peters, 289. The reasoning of his Honor, Mr. Chief Justice Taney, in the Charles River Bridge v. Warren Bridge, 11 Peters, 547, I will adopt as the ablest argument that can be presented to your Honors:— " The object and end of all government is to promote the happiness and prosperity of the community by which it is established, and it can never be assumed that the government intended to diminish its power of accomplishing the end for which it was created. A state ought never to be presumed to surrender this power, because, like the taxing power, the whole community have an interest in preserving it undiminished," &c.

The office of Canal Commissioner was " created for the purposes of government, and the officers clothed with certain defined and limited powers, to enable them to perform the public duties which were confided to them by law." (See opinion of the Hon. C. J. Taney, State of Maryland v. Baltimore and Ohio Railroad Company, 3 Howard, 550.) Whenever it ceased to be the public interest, or the policy of government, to confide the choice of Canal Commissioners to the executive, it was the duty, as it was the right, of the legislature, to change the mode of appointment, and there could be no cause for complaint when they recommitted the selection to the people. The law of 1843 is prospective in its operation, and leaves the plaintiffs in error without an apology for their claim. The legislature who passed it acted for the whole community, and if they committed an error, it was the duty of their successors, who assembled annually, and were clothed with ample power and presumed to be elected for the purpose of keeping the wheels of government in working order, to correct that error. The act of 1843 is the act of the people, who are the government, and must prevail.

The question raised in this case has been presented to the Supreme Court of Pennsylvania in several analogous cases, and decided, in every instance, against the officer who took exception to the reduction of his salary. Those cases remain in our books of reports as settled law. The constitutionality of the act of 1843 has also been directly ruled by the same court, in a case cited here by both sides, (Commonwealth v. Mann,) and which has not been questioned. The principle has been ruled in the following cases.

Commonwealth v. Bacon, 6 Serg. & Rawle, 322. " An ordinance of the Councils, reducing the salary of the Mayor of the city of Philadelphia, after the commencement of his term of service, is valid."

Barker v. The City of Pittsburg, 4 Barr, 49. " A joint resolution of the Select and Common Councils of the city of Pittsburg, abrogating the salary of a collector of tolls, before the expiration of the time for which he had been elected and given bond, was held, in an action by the collector for the balance of the annual salary, brought after the expiration of the term for which he had been elected, not to be unconstitutional, and that the plaintiff was without remedy."

Commonwealth v. Mann, 5 Watts & Serg. 418. The case of Commonwealth v. Bacon is referred to with approbation in the opinion of the court.

Commonwealth v. Clark, 7 Watts & Serg. 127. " The act of 18th April, 1843, authorizing the election of Canal Commissioners, is constitutional and valid."

Faithful legislation is often unavoidably harsh, but is not consequently illegal. It is occasionally ruinous; such is the case where private property is taken for public use; and yet the right of the State to take it is undoubted. The maxim of the law is, that a private mischief is to be endured, rather than a public inconvenience. The issue here is on a question of power; and by the force of great public necessity, the power to regulate the office and the salary of the officer is vested in the legislature and in the people. Examples are annually occurring of the exercise of this power, in every State government in the Union. It is a power which, if the Commonwealth can part with, it cannot be presumed to have parted with in the absence of conclusive proof of such an intention.

The exercise of this power is the axis on which the fabric of our free political institutions revolves, and you cannot impair it without jarring and overturning our republican form of government. It is an essential element of sovereignty, and I am at a loss to understand how our political organization can be maintained without it.

35 *

In construing a statute like the one under consideration, involving high political powers and sovereignty, the construction should be most favorable to the public interests. It rests in the plaintiffs in error to show that the legislature had the right to surrender, and that they did surrender, their legislative power.

Mr. Justice DANIEL delivered the opinion of the court.

This is a writ of error to the Supreme Court of the State of Pennsylvania, under the twenty-fifth section of the Judiciary Act of 1789, for the purpose of revising a judgment rendered by the court above mentioned at the May term of that court, in the year 1848, against the plaintiffs in error, in a certain action of assumpsit instituted against those plaintiffs on behalf of the Commonwealth of Pennsylvania.

By authority of a statute of Pennsylvania of the 28th of January, 1836, the plaintiffs in error were by the Governor of the State appointed to the place of Canal Commissioners; and by the same statute, the appointment was directed to be made annually on the 1st day of February, and the compensation of the Commissioners regulated at four dollars *per diem* each. Under this law, the plaintiffs in error, in virtue of an appointment of the 1st of February, 1843, accepted and took upon themselves the office and duties of Canal Commissioners. By a subsequent statute, of the 18th of April, 1843, the appointment of Canal Commissioners was transferred from the Governor to the people upon election by the latter, and the *per diem* allowance to be made to all the Commissioners was by this law reduced from four to three dollars, this reduction to take effect from the passage of the act of April 18th, 1843, which as to the rest of its provisions went into operation on the second Tuesday of January following its passage, that is, on the second Tuesday of January in the year 1844. Upon a settlement of their account as Canal Commissioners, made before the Auditor-General of the State, the plaintiffs in error, out of money of the State then in their hands, claimed the right to retain compensation for their services at the rate of four dollars *per diem*, for the full term of twelve months from the date of their appointment by the Governor; whilst for the State, on the other hand, it was refused to allow that rate of compensation beyond the 18th of April, 1843, the period of time at which, by the new law, the emoluments of the appointment were changed. In consequence of this difference, and of the refusal of the plaintiffs in error to pay over the balance appearing against them on the account as stated by the Auditor-General, an action was instituted against them in the name of the State, in the Court of Com-

mon Pleas of Dauphin County, and a judgment obtained for that balance. This judgment, having been carried by writ of error before the Supreme Court, was there affirmed, and from that tribunal, as the highest in the State, this cause is brought hither for revision.

The grounds on which this court is asked to interpose between the judgment on behalf of the State and the plaintiffs in error are these. That the appointment of these plaintiffs by the Governor of Pennsylvania, under the law of January 28th, 1836, was a positive obligation or contract on the part of the State to employ the plaintiffs for the entire period of one year, at the stipulated rate of four dollars per diem; and that the change in the tenure of office and in the rate of compensation made by the law of April 18th, 1843, (within the space of one year from the 1st of February, 1843,) was a violation of this contract, and therefore an infraction of the tenth section of the first article of the Constitution of the United States. In order to determine with accuracy whether this case is within the just scope of the constitutional provision which has thus been invoked, it is proper carefully to consider the character and relative positions of the parties to this controversy, and the nature and objects of the transaction which it is sought to draw within the influence of that provision.

The high conservative power of the federal government here appealed to is one necessarily involving inquiries of the most delicate character. The States of this Union, consistently with their original sovereign capacity, could recognize no power to control either their rights or obligations, beyond their own sense of duty or the dictates of natural or national law. When, therefore, they have delegated to a common arbiter amongst them the power to question or to countervail their own acts or their own discretion in conceded instances, such instances should fall within the fair and unequivocal limits of the concession made. Accordingly it has been repeatedly said by this court, that to pronounce a law of one of the sovereign States of this Union to be a violation of the Constitution is a solemn function, demanding the gravest and most deliberate consideration; and that a law of one of the States should never be so denominated, if it can upon any other principle be correctly explained. Indeed, it would seem that, if there could be any course of proceeding more than all others calculated to excite dissatisfaction, to awaken a natural jealousy on the part of the States, and to estrange them from the federal government, it would be the practice, for slight and insufficient causes, of calling on those States to justify, before tribunals in some sense foreign to themselves, their acts of general legislation. And

the extreme of such an abuse would appear to exist in the arraignment of their control over officers and subordinates in the regulation of their internal and exclusive polity; and over the modes and extent in which that polity should be varied to meet the exigencies of their peculiar condition. Such an abuse would prevent all action in the State governments, or refer the modes and details of their action to the tribunals and authorities of the federal government. These surely could never have been the legitimate purposes of the federal Constitution. The contracts designed to be protected by the tenth section of the first article of that instrument are contracts by which *perfect rights, certain definite, fixed private rights* of property, are vested. These are clearly distinguishable from measures or engagements adopted or undertaken by the body politic or State government for the benefit of all, and from the necessity of the case, and according to universal understanding, to be varied or discontinued as the public good shall require. The selection of officers, who are nothing more than agents for the effectuating of such public purposes, is matter of public convenience or necessity, and so too are the periods for the appointment of such agents; but neither the one nor the other of these arrangements can constitute any obligation to continue such agents, or to re-appoint them, after the measures which brought them into being shall have been found useless, shall have been fulfilled, or shall have been abrogated as even detrimental to the well-being of the public. The promised compensation for services actually performed and accepted, during the continuance of the particular agency, may undoubtedly be claimed, both upon principles of compact and of equity; but to insist beyond this on the perpetuation of a public policy either useless or detrimental, and upon a reward for acts neither desired nor performed, would appear to be reconcilable with neither common justice nor common sense. The establishment of such a principle would arrest necessarily every thing like progress or improvement in government; or if changes should be ventured upon, the government would have to become one great pension establishment on which to quarter a host of sinecures. It would especially be difficult, if not impracticable, in this view, ever to remodel the organic law of a state, as constitutional ordinances must be of higher authority and more immutable than common legislative enactments, and there could not exist conflicting constitutional ordinances under one and the same system. It follows, then, upon principle, that, in every perfect or competent government, there must exist a general power to enact and to repeal laws; and to create, and change or discontinue, the agents designated for the execution

of those laws. Such a power is indispensable for the preservation of the body politic, and for the safety of the individuals of the community. It is true, that this power, or the extent of its exercise, may be controlled by the higher organic law or constitution of the State, as is the case in some instances in the State constitutions, and as is exemplified in the provision of the federal Constitution relied on in this case by the plaintiffs in error, and in some other clauses of the same instrument; but where no such restriction is imposed, the power must rest in the discretion of the government alone. The constitution of Pennsylvania contains no limit upon the discretion of the legislature, either in the augmentation or diminution of salaries, with the exceptions of those of the Governor, the judges of the Supreme Court, and the presidents of the several Courts of Common Pleas. The salaries of these officers cannot, under that constitution, be diminished during their continuance in office. Those of all other officers in the State are dependent upon legislative discretion. We have already shown, that the appointment to and the tenure of an office created for the public use, and the regulation of the salary affixed to such an office, do not fall within the meaning of the section of the Constitution relied on by the plaintiffs in error; do not come within the import of the term *contracts*, or, in other words, the vested, private personal rights thereby intended to be protected. They are functions appropriate to that class of powers and obligations by which governments are enabled, and are called upon, to foster and promote the general good; functions, therefore, which governments cannot be presumed to have surrendered, if indeed they can under any circumstances be justified in surrendering them. This doctrine is in strictest accordance with the rulings of this court in many instances, from amongst which may be cited its reasoning in the important and leading case of The Charles River Bridge *v.* The Warren Bridge, in 11 Peters's Reports, and in the case of The State of Maryland *v.* The Baltimore and Ohio Railroad Company, in 3 Howard's Reports, — to which might be added other decisions upon claims to monopoly, as ferry privileges, in restraint of legislative action for public improvement and accomodation. In illustration of the doctrine here laid down, may also be cited the very elaborate opinion of the Supreme Court of New York in the case of The People *v.* Morris, reported in 13 Wendell, 325 The precise question before us appears to have been one of familiar practice in the State of Pennsylvania, so familiar, indeed, and so long acquiesced in, as to render its agitation at this day somewhat a subject of surprise; and the reasoning of the Supreme Court upon it in the case of the Commonwealth

*v.* Bacon, 6 Sergeant and Rawle, p. 322, is at once so clear and compendious as to render it well worthy of quotation here. " These services," says Duncan, Justice, in delivering the opinion, "rendered by public officers, do not in this particular partake of the nature of contracts, nor have.they the remotest affinity thereto. As to a stipulated allowance, that allowance, whether annual, *per diem,* or particular fees for particular services, depends on the will of the law-makers; and this, whether it be the legislature of the State, or a municipal body empowered to make laws for the government of a corporation. This has been the universal construction, and the constitution puts this question at rest in the provision for the salary of the Governor and judges of the Supreme Court, and of the presidents of the Courts of Common Pleas. The Governor is to receive at stated times, for his services, a compensation which shall neither be increased nor diminished during the period for which he shall have been elected. The judges and presidents shall at stated times receive for their services an adequate compensation, to be fixed by law, which shall not be diminished during their continuance in office. These provisions are borrowed from the Constitution of the United States. It is apparent that the compensation of the Governor and judges is a matter of constitutional provision, — that of all other officers is left open to the legislature. The allowances, the compensation, the salary, the fees of all other officers and members of the legislature, depend on the legislature, who can and who do change them, from time to time, as they conceive just and right."

So in the case of the Commonwealth *v.* Mann, 5 Watts and Sergeant, p. 418, the court say, "that, if the salaries of judges and their title to office could be put on tne ground of contract, then a most grievous wrong has been done them by the people, by the reduction of a tenure during good behavior to a tenure for a term of years. The point that it is a contract, or partakes of the nature of a contract, will not bear the test of examination." And again, in the case of Barker *v.* The City of Pittsburg, the court declare it as the law, " That there is no contract express or implied for the permanence of a salary, is shown by the constitutional provision for the permanence of the salaries of the Governor and judges as exceptions." 4 Barr, Pa. State Reports, 51. We consider these decisions of the State court as having correctly expounded the law of the question involved in the case before us, as being concurrent with the doctrines heretofore ruled and still approved by this court, — concurrent, too, with the decision of the Supreme Court of Pennsylvania now under review, which decision we hereby adjudge and order to be affirmed.

Mr. Justice McLEAN.

In this case, I think we have no jurisdiction. There was no contract which could be impaired, within the provision of the Constitution of the United States. This is clearly shown in the opinion of the court. In such a case, I suppose the proper entry would be, to dismiss the writ of error. By the affirmance of the judgment of the Supreme Court of Pennsylvania, we take jurisdiction.

## *Order.*

This cause came on to be heard on the transcript of the record from the Supreme Court of Pennsylvania, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Supreme Court in this cause be, and the same is hereby, affirmed, with costs.