John BERENGUER et al., Plaintiffs,

v.

Emmett DUNLAVEY, Deputy Director of the Division of Adult Corrections, et al., Defendants.

Civ. A. No. 4460.

United States District Court,
District of Delaware.

Dec. 27, 1972.

Samuel H. Lewis, of Autman, Barrett & Lewis, Dover, Del., for plaintiffs.

David K. Brewster, Deputy Atty. Gen., Wilmington, Del., for defendants.

Before VAN DUSEN, Circuit Judge, and LATCHUM and STAPLETON, District Judges.

## OPINION

LATCHUM, District Judge.

In this civil rights action, the plaintiffs seek declaratory and injunctive relief. The plaintiffs are, or were at the time suit was brought, employees of the Delaware Department of Health and Social Services, Division of Adult Corrections, Section of Probation and Parole. The defendants [1] are all duly elected or appointed officials of the State of Delaware. The plaintiffs, on behalf of themselves and all other employees [2] of the Probation and Parole Section, seek a declaration of unconstitutionality of, and an injunction against the enforcement of Section 33 of House Bill No. 676 ("Section 33"). Among other reasons, the plaintiffs contend that Section 33 deprives them of the equal protection of the laws guaranteed by the Fourteenth Amendment. Plaintiffs maintain that the defendants by enforcing Section 33 are acting under color of state law in violation of 42 U.S.C. § 1983 to deprive them of their constitutional rights.

Jurisdiction is conferred upon this Court [3] by 28 U.S.C. § 1343(3) and (4).

---

1. The named defendants are the Governor, the Secretary of the Department of Health and Social Services, the Director and Deputy Director of the Department of Adult Corrections and the members of the State Personnel Commission.

2. There are approximately 56 employees of the Probation and Parole Section.

3. Since the complaint alleged the unconstitutionality of a Delaware statute and requested declaratory and injunctive relief, this Three Judge District Court was

On August 18, 1972 the named plaintiffs [4] were either summarily discharged from state employment or placed on probation effective September 8, 1972. The notices of dismissal or probation did not assign reasons for the action taken nor did they provide for a hearing. The plaintiffs filed the present action on September 1, 1972. On September 5, 1972 the Court entered an order temporarily restraining the defendants from taking any action under Section 33 until the Three Judge District Court could consider the question.

In the matter presently under consideration, the defendants have moved for summary judgment on the ground they are entitled to judgment in their favor as a matter of law.

The undisputed record now before the Court reveals: On June 15, 1965, the State of Delaware adopted an Act granting the right to all public employees freely to organize and designate representatives of their own choosing for the purpose of collective bargaining with public employers. 19 Del.C. §§ 1301–1312. Effective July 1, 1966, Delaware by law established a system of personnel administration based on merit principles and scientific methods governing employees of the State in the classified service. 29 Del.C., Chapter 59. Employees of the Probation and Parole Section were covered by both acts. They, like the great majority of other Delaware State administrative employees, enjoyed the right to organize, the security of tenure, the right to receive reasons for dismissal or probation, the right to receive uniform pay within job classifications, the right to transfer positions within the system, and the panoply of other rights relating to working conditions.

On July 1, 1972, the Delaware General Assembly passed House Bill No. 676,[5]

"An Act Making Appropriations For The Expense Of The State Government For The Fiscal Year Ending June 30, 1973." Section 1 of House Bill No. 676 appropriated operating funds to the various state departments and agencies for that fiscal year. An appropriation of $706,215 was made for the operation of the Probation and Parole Section. However, Section 33 of the Act conditioned this appropriation by providing:

"The appropriations provided in Section 1 of this Act for the Probation and Parole Section of the Division of Adult Corrections under the Department of Health and Social Services are conditional upon the complete reorganization of the staff, including dismissals, replacements, transfers, hirings, and new management to become effective no later than July 1, 1972. For the purpose of providing complete flexibility in implementing such reorganization the provisions of Title 19, Chapter 13, Section 1301 through 1311 and Title 29, Chapter 59 are hereby suspended and made inapplicable immediately through and until July 1, 1973 as they may apply to any and all employees of said Probation and Parole Section, with all final decisions resting with the Secretary of Health and Social Services, and without further recourse for any reason at law or otherwise by or on behalf of any and all employees within the Probation and Parole Section. Effective immediately, no employee of said Probation and Parole Section shall be or become engaged in any outside employment with a commercial or industrial business or service, if such employment interferes with the proper performance of his regular duties as determined by the Secretary of Health and Social Services."

designated by Chief Judge Seitz pursuant to 28 U.S.C. § 2281.

4. Plaintiffs Berenguer, Tarkenton, Trujillo and Robb were discharged and plaintiff Sharp was placed on probation.

5. The full number of the bill was House Substitute No. 1 for House Bill No. 676 as amended by House Amendment No. 6 and Senate Amendments Nos. 3, 4, 5, 6, 8, 10, 11, 13, 15, 16, 22, 23, 24, 27 and 33. ("House Bill No. 676").

The language used in Section 33 prima facie deprived all of the employees of the Probation and Parole Section including the named plaintiffs of valuable rights conferred upon state employees by the merit system act and the act granting the right to organize and bargain collectively. Moreover, Section 33 also foreclosed further recourse for any reason at law or otherwise by such employees.[6] Section 33 applies only to the employees of the Probation and Parole Section. It has no effect whatsoever upon the many other state employees in the classified service. The purported legislative purpose behind the statute is found in the language of the statute itself, namely that in order to formulate a reorganization of the Probation and Parole Section, the rights theretofore given to employees of that Section under the merit system act and the right to organize act were to be suspended.

Some of the more important rights accorded to state employees under the merit system act, 29 Del.C., Chapter 59, are uniformity of classification, uniform pay plan, competitive examinations for positions, criteria for determining promotions, eligibility lists for advancement, right to interdepartmental transfers, maintenance of performance records, right to appeal a discharge, procedure for filing grievances, and right to time off with pay.

The Court is unable to see how "reorganization" of the Probation and Parole Section, which ordinarily implies that employees will be transferred, a different chain of command established, duty assignments changed, etc., will be facilitated by the suspension of merit system rights. Of all the merit system rights, it would appear that the only ones whose suspension might aid implementation of a reorganization would be the provisions for a uniformity of classification and a uniform pay plan, since these provisions relate to the responsibilities and duties assigned to an occupational position and those particular characteristics will be in a state of flux during the reorganization. Suspension of the remaining merit system rights would not appear to aid implementation of a reorganization.[7]

This lack of rational connection between the suspension of all merit system rights and the implementation of a "reorganization" convinces the Court that the State Legislature was really providing the administrative authorities with the power to dismiss employees of the Probation and Parole Section for little or no reason and without any appeal procedure. This sort of conduct is impermissible. There is an available procedure for dismissing state employees for cause without denying them the protection of the merit system. That it may be more time-consuming than a summary dismissal is not a sufficient basis for denying some state administrative employees the procedural safeguards of the merit system while affording them to others. While a state has discretion in the selection of the privileges and rights it will confer on different classes of employees, the classification chosen must be reasonable. The approach taken by Section 33 invidiously

6. The use of the language "without further recourse for any reason at law or otherwise" is so broad that it could be construed to arbitrarily deprive the plaintiffs of not only their administrative rights conferred by the merit system but also their right to raise even constitutional issues by judicial appeal.

7. In fact several of the merit system requirements, such as right to interdepartmental transfers, competitive examinations for position, criteria for determining promotion, eligibility lists for advancement and maintenance of performance records would actually be very relevant and helpful in an attempted stratification of the Probation and Parole Section. The transferal right would enable the employees whose qualifications no longer fit their revised job classifications to seek employment in another department of the state. The latter merit rights actually provide performance data which would aid in determining who was qualified for the reorganized positions.

discriminates against one group of state employees and thus runs afoul of the Equal Protection Clause, which requires that any exclusion of public employees from benefits prescribed by statute shall not be "patently arbitrary or discriminatory." Wieman v. Updegraff, 344 U.S. 183, 192, 73 S.Ct. 215, 219, 97 L.Ed. 216 (1952); see Orr v. Thorp, 308 F.Supp. 1369, 1372 (S.D.Fla.1969); cf. Williams v. Rhodes, 393 U.S. 23, 30, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968).

The defendants suggested that the Legislature might have decided that the work done by the Probation and Parole employees was of a professional nature and since other professional type employees are in an unprotected class, placing the plaintiffs in the unprotected class was justified.[8] The Court rejects this suggestion as without merit since Section 33 does not remove the employees permanently from the merit system as an excluded class, but merely for a period of a year. Clearly Section 33 was adopted to permit their removal without the procedural safeguards enjoyed by the vast majority of state employees.[9]

The provision of Section 33 which suspends the right of the Probation and Parole employees to organize also amounts to an arbitrary classification violative of the Equal Protection Clause for the same reasons as expressed above with regard to the merit system rights suspension. The defendants have made no showing, nor has the Court been able to discover on its own, a rational connection between suspension of the rights to organize, select representatives, and bargain collectively and the planned "reorganization." Here again it appears to the Court that the suspension of these rights enjoyed by all other state employees, was, in reality, a measure intended to insure that summary dismissal of employees from the Probation and Parole Section could occur without objections from any such organization.

Accordingly, the Court concludes, based on the present record that Section 33 is unconstitutional in so far as it suspends the operation of the provisions of 19 Del.C., Chapter 13, §§ 1301 through 1311 and 29 Del.C., Chapter 59 with respect to the employees of the Probation and Parole Section and the defendants' motion for summary judgment therefore must be denied.

STAPLETON, District Judge (concurring).

While I concur in the decision of the Court that defendants' motion for summary judgment should be denied, I reach this result by a substantially different path. Since I would conclude that plaintiffs' constitutional attacks on Section 33 are without merit; I consider it important to trace my steps and delineate the narrow basis for my concurrence.

The defendants have moved for summary judgment on Count I of the complaint asserting that Section 33, in all respects challenged by the plaintiffs, is consistent with the Constitution of the

---

8. Under 29 Del.C. 5903, 19 classes of employees are exempted from merit system coverage, such as policy-making heads of departments, state attorneys, and employees of the judiciary.

9. Our finding that the record, as submitted requires a determination that § 33 violates the plaintiffs' right to equal protection makes unnecessary any discussion of the parties' other contentions. See paragraphs 10 and 11 of the plaintiffs' complaint, which provide, inter alia:

"10. . . . the plaintiffs . . . were deprived of their constitutional rights of the [sic] process of law . .

.  .  .  .  .
"11. . . .
"(a) Section 33 . . . is too vague and ambiguous . . .
"(b) Section 33 . . . [denies] the plaintiffs the right to due process of law . . .

.  .  .  .  .
"(e) Section 33 . . . is an ex post facto law . . .
"(h) Section 33 . . . impairs the obligations of plaintiffs' contracts with the State of Delaware for employment . . . ."

United States.[1] I agree, nevertheless, I conclude that summary judgment should be denied because there is a material dispute of fact as to whether the plaintiffs are threatened with a deprivation of liberty without due process of law in violation of the Fourteenth Amendment. More specifically, I conclude that the disparagement of the staff of the Probation and Parole Section inherent in Section 33's legislative declaration together with the subsequent but immediate attempt by the State to discharge plaintiffs without charge and a hearing provides sufficient evidence of a threatened violation of the Fourteenth Amendment to preclude summary judgment.

Before examining each of the plaintiffs' challenges to Section 33, it is important to note what is *not* involved in this case. Count I of the complaint asserts no violation of plaintiffs' rights of association or free speech, or of any other rights secured by the First Amendment to the United States Constitution. It alleges no facts from which it could be inferred that any of the plaintiffs have been, or will be, discharged, disciplined or otherwise discriminated against because of the exercise of any such rights. In particular, it alleges no facts which shed any light on whether or not plaintiffs are members of a union, or whether or not they desire to join a union. In short, there is no First Amendment issue tendered in this case.

## I. EQUAL PROTECTION OF THE LAWS.

Where, as here, a state statute is challenged on equal protection grounds and the alleged infirmity is founded on claims other than that the statute infringes upon a "fundamental right"[2] or creates a "suspect classification,"[3] the relevant question for the court is solely "whether the challenged classification rests on grounds wholly irrelevant to the achievement of a valid state objective." Turner v. Fouche, 396 U.S. 346, 362, 90 S.Ct. 532, 541, 24 L.Ed.2d 567 (1970); Developments in the Law: Equal Protection, 82 Harv.L.Rev. 1067, 1076–1087 (1969). The challenged state law is entitled to a presumption of validity and must be allowed to stand unless the one mounting the attack convinces the court either that the law has no permissible objective or, given a valid objective, that there is no "rational basis" for the means selected. Bullock v. Carter, 405 U.S. 134, 142, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

In making this type of evaluation, the court may not "second guess" the state legislature. "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).

Section 33, on its face, reflects a legislative finding that the public interest requires an expeditious and "complete reorganization of the staff [of the probation and parole section] including dismissals, replacements, transfers, hirings and new management." This, as the

---

1. I assume without deciding that Rule 54(b) would authorize this Court to grant summary judgment on Count I despite the pendency of Counts II and III. Count I attacks the constitutionality of Section 33 and actions taken by defendants thereunder. Count II of the complaint alleges in conclusory fashion that one of the plaintiffs filed a grievance prior to the adoption of Section 33 and has been denied a hearing thereon. Count III alleges that two of the plaintiffs were discharged after the adoption of Section 33 because they are of Latin American descent.

The defendants have conceded that the plaintiff referred to in Count II is entitled to a hearing on his grievance under Delaware law and perhaps that count is now moot. As to Count III, however, there is a material dispute of fact as to whether the discharges referred to therein were racially motivated.

2. E. g. the rights of free speech, association, to vote and to migrate, etc.

3. E. g. based on race or economic condition, etc.

majority apparently recognizes,[4] is a valid state objective. Purportedly to permit the "flexibility" necessary to accomplish this valid objective, Section 33 suspends the provisions of the merit system as applied to the Probation and Parole Section for a period of approximately one year. It likewise suspends the Secretary's duty to engage in collective bargaining during the same period. The crucial question is whether these suspensions with respect to this limited segment of the public employees of the State of Delaware is "wholly irrelevant" to the achievement of the legislative objective of forcing an expeditious and complete reorganization of this section.

If there were no rational connection between these suspensions and the reorganization sought, the resulting discrimination between employees of this section and other public employees with similar responsibilities might, indeed, be impermissible. I am unable, however, to join the majority in holding that no such rational connection exists.

The principal features of Delaware's Merit System are (1) the establishment of tenure and attendant procedural rights designed to protect tenure in the context of dismissals, discipline and demotion, and (2) uniform job classification throughout all departments covered by the system with uniform pay scales for comparable jobs. The majority concludes that suspension of the latter feature of this system "might aid implementation of a reorganization" since it relates to "responsibilities and duties assigned to an occupational position and those particular characteristics will be in a state of flux during the reorganization." I concur and note further that, under the Merit System regulations, the creation of a new post or a substantial change in the responsibilities of an existing one triggers a procedure requiring review by the State Director of Personnel and a possible appeal to the State Personnel Commission.[5]

The majority concludes, however, that there is no rational connection between the suspension of tenure and associated rights and the legitimate objective of an expeditious and complete reorganization of this public service unit. I cannot agree. I do not, of course, pass upon the wisdom of the suspension. I can conceive, however, of a set of facts under which a rational legislator might conclude that the need for urgent reorganization would be better served by the suspensions decreed in Section 33.

When an official having ultimate responsibility for the functioning of a particular government unit determines that an employee should be dismissed, demoted for disciplinary reasons, or suspended, he initiates this action, in most instances, by a written notice. Thereafter, the employee has thirty days to file an appeal with the Director of Personnel, who, within an additional thirty day period, schedules a hearing before the State Personnel Commission for some date thereafter "within a reasonable time." Preparation of the findings and recommendations of the Commission may take an additional fifteen working days. If the action of the supervisory official is sustained, the employee may appeal to the Superior Court within thirty days of being notified of the final action of the Commission. After such an appeal, a citation issues by the clerk of the court for certification of the record. Twenty days are allowed thereafter for the filing of the certified record. Superior Court Rule 72(e). A minimum of sixty-five days is provided thereafter for briefing and argument. Rule 72(g). The decision of the court follows at some point thereafter. Not until that decision does the responsible official know for certain where he stands in terms of personnel planning.

4. Since the majority ultimately concludes that the means selected is wholly irrelevant to this objective, it is naturally led to conclude that there must have been a purpose other than reorganization.

5. Regulations 3.0700, 3.0800, 3.0810, 3.0820, 3.0900, 3.0910.

There are, of course, other aspects to the merit system. In my judgment many fall in the same category on the current record as tenure and uniform job classification. (E. g. provisions for interdepartmental transfer, competitive examinations for position and criteria for determining promotion). Others, such as the maintenance of performance records, do not. I do not, however, construe Section 33 as precluding the maintenance of such records and, in any event, do not believe that the legislative knife must cut with absolute precision when it finds that a comprehensive and interrelated scheme of personnel management conflicts in a substantial way with the accomplishment of a valid state interest. Finally, I do not construe Section 33 as purporting to cut off any recourse at law other than recourse founded upon statutory rights conferred by the merit system. The defendants apparently construe this statute in a similar fashion since they have raised no objection to this proceeding on the grounds of this language in Section 33.

Finally, the plaintiffs have failed to present any facts or arguments suggesting a lack of rational connection between the suspension of Chapter 13 of Title 19 of the Delaware Code and the expeditious and complete reorganization sought. As I read Section 33 and Chapter 13, the primary effect of this suspension is to relieve the Secretary, for a period of a year, from the duty to pursue the collective bargaining process and, in the event of unsuccessful negotiations, to arbitrate before the Department of Labor.[6] Again, without disparaging in any way the benefits to be derived from the collective bargaining process, I cannot say it is irrational to free the Secretary of these obligations during a period of substantial flux and change.

In short, the Delaware Legislature wanted an expeditious and complete reorganization of the Probation and Parole Section. In order to give the Secretary the ability to act freely and quickly it temporarily suspended the operation of statutes which it had theretofore adopted as generally applicable state policy. This may have resulted in personal hardship for some, but it did not deny to plaintiffs equal protection of the laws.

## II. THE CONTRACT CLAUSE.

Plaintiffs next allege that their employment during a period in which Delaware's Merit System was applicable to the Probation and Parole Section created contracts between them and the state which "included the rights, duties and obligations encompassed by the State Merit System . . ." and that the enactment of Section 33 unconstitutionally impaired the obligations of these contracts.[7] This argument is without merit.

When a state enters into a contract with a private person the contract rights

---

6. Chapter 13 includes a provision for determination of bargaining units, a provision for the election of exclusive bargaining representatives, a mandate that "no public employer shall refuse to engage in collective bargaining" (Section 1309), a provision providing for arbitration upon failure to reach a collective bargaining agreement, payroll deduction of dues, a prohibition against strikes, and a provision that "the right of public employees freely to organize . . . for the purpose of collective bargaining . . . shall not be denied." (Section 1302).

The rights to compel an employer to bargain with a union did not predate the enactment of the National Labor Relations Act. Employees of the federal govment and of state and local governments were specifically exempted from the coverage of that Act. 29 U.S.C. § 152. The primary purpose of Chapter 13 of Title 19, as I read it, is not to provide statutory recognition of the constitutional right to organize, but rather to grant rights to state employees roughly analogous to the collective bargaining rights granted to employees in the private section by the Labor Management Relations Act. Section 33's suspension should be read as relieving the Secretary of his duty to bargain collectively with a representative of the employees of the Probation and Parole Section and not as an attempt by the legislature to infringe constitutionally protected rights of association.

7. The complaint does not allege the existence of express contracts, written or oral, between the plaintiffs and the state.

arising thereunder are protected from impairment by Article I, Section 10 of the Constitution. But such "contractual rights" will not be lightly inferred from the enactment of a statute lest legislative flexibility be unduly impaired. "The presumption is that [a statute conferring a benefit] is not intended to create private contractual or vested rights, but merely declares a policy to be pursued until the Legislature shall ordain otherwise." Dodge v. Board of Education, 302 U.S. 74, 79, 58 S.Ct. 98, 100, 82 L.Ed. 57 (1937). One who asserts a contract arising from a statute has the burden of overcoming that presumption. Rector of Christ Church v. County of Philadelphia, 65 U.S. 300, 24 How. 300, 16 L.Ed. 602 (1860). If a statute provides for the execution of a written contract, Hall v. Wisconsin, 103 U.S. 5, 26 L.Ed. 302 (1880), or if by reference to the term "contract" it clearly contemplates a contractual relationship, Indiana ex rel. Anderson v. Brand, 303 U.S. 95, 58 S.Ct. 443, 82 L.Ed. 685 (1938), the case for application of Article I, Section 10 is clear. But an act which merely fixes salaries of officers creates no contract in their favor and can be altered at will, Butler v. Pennsylvania, 51 U.S. 402, 10 How. 402, 13 L.Ed. 472 (1850). Similarly, an act fixing the term or tenure of a public officer or an employee of a state agency creates no "contract" in the constitutional sense. Dodge v. Board of Education, *supra*; Crenshaw v. United States, 134 U.S. 99, 10 S.Ct. 431, 33 L. Ed. 825 (1890). An act which creates a uniform regulated way for the state to deal with its employees cannot, in the absence of clear legislative intent to create a contract, bind the legislature not to repeal or amend the statute *in futuro*. To hold otherwise would be to needlessly impair the power of the sovereign to adapt its law to changing circumstances.

## III.  THE EX POST FACTO CLAUSE.

Plaintiffs' contention that Section 33 is unconstitutional as an *ex post facto*

law is also untenable. It was early laid down that an *ex post facto* law is one which makes criminal and punishes an act which was done before passage of the law and which was innocent when done. Calder v. Bull, 3 U.S. 385, 3 Dall. 386, 1 L.Ed. 648 (1798). Additionally laws which increase punishment, or alter the applicable proof required to convict may be invalid *ex post facto* laws. See 16A C.J.S. Constitutional Law § 435. The constitutional prohibition against *ex post facto* law applies only to criminal or penal matters, Galvan v. Press, 347 U.S. 522, 531 n. 4, 74 S.Ct. 737, 98 L.Ed. 911 (1954). While the prohibition cannot be avoided by giving a civil form to provisions which are criminal in effect,[8] that principle has no application here. Section 33 cannot fairly be characterized as penal; it punishes no prior act. *Cf.* Hess v. Hampton, 338 F.Supp. 1141, 1148 (D.D.C.1972) (three judge court).

## IV.  PROCEDURAL DUE PROCESS.

Plaintiffs assert that the enactment of Section 33 deprived them of property without procedural due process in violation of the Fourteenth Amendment.

While the range of interests protected by the Fourteenth Amendment is wide, *cf.* Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), not every governmental action which affects the economic position of a citizen is a taking of "property" in a constitutional sense. The initial inquiry here then is whether plaintiffs have been denied a "property" interest protected by the Fourteenth Amendment. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

In *Roth, supra,* the Supreme Court held that a non-tenured teacher employed pursuant to a year-to-year contract had no "property" interest in his continued employment sufficient to require the state to give him notice and an opportunity to be heard before it refused to renew his contract. If the teacher had been tenured, Slochower v.

8.  E. g. the state may not limit access to a profession or employment as punishment for those who did an act that was legal when done. Cummings v. Missouri, 4 Wall. 277, 71 U.S. 277, 18 L.Ed. 356 (1866).

Board of Education, 350 U.S. 551, 76 S. Ct. 637, 100 L.Ed. 692 (1956), if dismissal had been during the term of a contract, Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952), or if there had been an implied promise of continued employment, Connell v. Higgenbotham, 403 U.S. 207, 91 S.Ct. 1772, 29 L.Ed.2d 418 (1971), the court clearly intimated that a protected property interest would be present.

In Perry v. Sinderman, 408 U.S. 593, 92 S.Ct. 2717, 33 L.Ed.2d 581 (1972), decided the same day, the Court held that a non-tenured teacher who was summarily dismissed had been denied procedural due process if he could show, as he alleged, that he had an "expectancy" of continued employment based upon a "de facto" tenure system adopted by the state. *Sinderman* did not hold that a termination of this "expectancy", as distinguished from termination of employment itself, would constitute a taking of "property" in a constitutional sense. The situation here is quite different than that present in *Sinderman*; there a single individual was dismissed without a hearing while an alleged system of "de facto" tenure protected him. Here a class of individuals were deprived not of their employment but of a merit system status which had created an expectancy of continued employment. While a legislative determination that one class of employees ought not continue to enjoy a benefit that others continue to enjoy must meet the applicable equal protection test, the legislature need not, before making such a determination, provide notice and an opportunity to be heard to each affected employee.

*Sinderman* rests upon the finding of a "property" right to continued employment existent because of a reasonable expectancy flowing from a "de facto" tenure system; plaintiffs here assert a

"property" right in the expectancy itself. *Sinderman* did not go so far as to intimate that the relevant state officers in that case could not affect the existence of the "de facto" tenure system— and thus the expectancy—without notice and hearing to affected employees.

Accordingly, I conclude that the adoption of Section 33 did not deprive plaintiffs of "property" as that term is used in the Fourteenth Amendment. Further, I conclude that, any presently existing threat of discharge without notice and an opportunity for a hearing does not constitute a threat of a deprivation of "property" in the constitutional sense. Since Section 33 effectively eliminated the only basis upon which plaintiffs here claim "an expectancy of continued employment," a case based upon such a threat is controlled by Board of Regents v. Roth, *supra*.

This does not end the matter, however. Liberally read, the complaint alleges that a combination of the declaration in Section 33 and the subsequent immediate firing of the plaintiffs has severely injured their reputations and ability to pursue their profession. (Compl. ¶¶ 11(f), (g)). While the Supreme Court has made it clear that not every state action that affects one's reputation or ability to secure employment necessarily impairs a protected "liberty" interest so as to require due process procedural protections,[9] it seems settled that, in the proper case, invasion of these interests may amount to a deprivation of "liberty" for Fourteenth Amendment purposes. See e.g. Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); Parker v. Lester, 227 F.2d 708 (9th Cir. 1955); Birnbaum v. Trussell, 371 F.2d 672 (2nd Cir. 1966).

The circumstances of the enactment of Section 33 followed closely by the dismissal of plaintiffs raises an issue as to

9. "Mere proof, for example, that [plaintiff's] record of nonretention in one job, taken alone, might make him somewhat less attractive to some other employers would hardly establish the kind of foreclosure of opportunities amounting to a

deprivation of 'liberty.' *Cf.* Schware v. Board of Bar Examiners [353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957)]." Board of Regents v. Roth, 408 U.S. 564, 574 n. 13, 92 S.Ct. 2701 at 2708 (1972).

454

the extent, if any, of an injury to plaintiffs' reputational interest. This issue cannot properly be resolved on this motion for summary judgment. If the actions of the state impaired a protected interest in liberty, then any dismissal of plaintiffs without notice and hearing would violate the proscriptions of the due process clause.

The state's assertion that any procedural due process issue raised by the alleged dismissals is moot because those dismissals were rescinded after the commencement of this lawsuit is not a complete answer. Plaintiffs were reinstated pursuant to a restraining order issued by this Court.[10] If this action by the state were held to render the case moot and summary judgment were entered in defendants' favor, the state would be free thereafter to follow a course similar to the one of which plaintiffs here complain. United States v. Concentrated Phosphate Export Assn., Inc., 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968).

---

10. It was asserted at argument that certain of the plaintiffs were later dismissed pursuant to the provisions of the merit system. It does not appear of record, however, what procedures were followed in these dismissals and I am, therefore, unable to conclude that these employees were properly terminated from employment thus rendering their present claims of injury moot.