JOHN ALEXANDER AND OTHERS vs. JOHN McKENZIE AND OTHERS.

Contesting parties claiming the same office—the one, out of possession, de-
manding against the other, in possession, judgment of ouster in the nature
of a *quo warranto*—may state a case containing the facts, and submit the
legal questions arising therefrom to the Supreme Court in the manner
authorized by Sec. 389 of the Code of Procedure, and that Court has ju-
risdiction to hear and decide the case in that form of proceeding.

Sec. 4, Art. IV, of the Constitution, declaring that the Supreme Court "shall
always have power to issue writs of * * * *quo warranto*," was not inserted
in that instrument for the purpose of perpetuating a mere form, but for the
purpose of vesting the Court with jurisdiction in that class of cases where
the writ of *quo warranto* was the proper remedy at the time of the adoption
of the Constitution. It was competent, therefore, for the Legislature to
abolish the writ itself and substitute a "civil action" in its place, as the
form of proceeding, even in a case coming originally before the Supreme
Court.

Under the Act of September 25, 1868, "to provide for the election of the officers
of the incorporated cities and towns in the State," certain persons were
duly elected to the offices of Mayor and Aldermen of the city of Columbia,
to hold their offices until April, 187?. Under the Act of February 26, 1870, "to
alter and amend the charter and extend the limits of th‑ city of Columbia,"
certain other persons were, on the first Tuesday of April, 1870, elected to the
same offices to hold their offices for two years: *Held*, That the election,
under the Act of February 26, 1870, was a valid election; that, by a proper
construction of the Act, the persons entitled by said election, had the right
to the immediate possession of the said offices, and that it made no differ-
ence that the office of Mayor was a salaried office.

The offices of Mayor and Aldermen of an incorporated city or town are public
political offices, and the power vested in them is political in its nature.

In the absence of any constitutional inhibition, political offices are subject to
the entire control of the Legislative power of the State, which may, at its
mere will and pleasure, abolish the offices themselves, or change the tenure
by which they are held, or remove the officers and put others in their place
with or without election.

A political officer does not hold by contract, in the sense of the Constitution, nor
has he any vested right of property, in a constitutional sense, in the office,
or in the salary thereof, before he has earned it.

Political powers always enure to the beneficial use of the political community,
as such, exclusively, and are revoable at the mere will of the government
communicating them.

This was an original application to the Supreme Court for judg-
ment of ouster. A case containing the facts was agreed upon and
submitted without action. It is as follows:

"John Alexander, J. W. Denny, Augustus Cooper, Charles Mi-
nort, W. Hutson Wigg, Israel Smith, William Hayne, William
Mooney, Joseph Taylor, S. B. Thompson, R. M. Wallace, William
Simons and Isaac Goodwin claim to have been duly elected, accord-
ing to law, to the offices of Mayor and Aldermen of the City of
Columbia, in the said State, the former to the office of Mayor, and
the latter to the offices of Aldermen of the said city, and to be enti-

6A

tled to enter forthwith upon the possession and exercise of the said offices.

" John McKenzie, Clark Waring, James Claffy, Jacob Hussung, R. L. Bryan, O. Z. Bates, W. P. Geiger, W. T. Walter, John Agnew, Edward Hope, R. W. Johnston and G. A. Shields, the former acting Mayor, and the latter acting Aldermen, of the said city, resist said claim.

" The following are the facts upon which the said controversy depends :

" 1. That the city of Columbia is a public municipal corporation, created by the Statutes of the State of South Carolina, and that the offices of Mayor and Aldermen of the said city are also created and established by the Statutes of the said State.

" 2. That under and by virtue of an Act of the General Assembly of the said State, passed September 25, 1868, and entitled " An Act to provide for the election of the officers of the incorporated cities and towns in the State of South Carolina," an election was held for Mayor and Aldermen of the said city, on the second Tuesday of November, A. D. 1868, and that at said election the defendants above named were duly elected to the offices of Mayor and Aldermen of the said city, and were duly qualified and entered upon the duties of their respective offices, and have since continued to hold and exercise the duties of said offices.

" 3. That by the provisions of said Act last above named the said acting Mayor and Aldermen were entitled to hold their offices up to the regular time fixed by charter for the election of the same, and for one full term thereafter, which term will not expire until April, 1872.

" 4. That by an Act of the General Assembly of said State, passed February 26th, 1870, and entitled " An Act to alter and amend the charter and extend the limits of the city of Columbia," the boundaries of the said city were extended to embrace a territory not heretofore embraced within the corporate limits of the said city, and that by the said Act last above named it was further ordered that an election for Mayor and Aldermen of the said city should be held on the first Tuesday of April, A. D. 1870, and on the first Tuesday of April every two years thereafter.

" 5. That under and by virtue of said Act of the General Assembly last above named, an election was held on the fifth day of April in the current year, for the offices of Mayor and Aldermen of the said city of Columbia. That on the sixth day of April in the cur-

rent year, the Managers of said election did meet and count the votes cast at said election, and did make due and lawful return thereof, together with the ballots, to the acting Mayor and Aldermen of the said city. That on the 12th day of April in the current year the said plaintiffs above named did make due and lawful demand upon the said defendants above named for the possession and enjoyment of the said offices, and that said demand was refused by the said defendants; and that said defendants have, since the time of said demand, continued to hold and exercise, and do now hold and exercise, the said offices of Mayor and Aldermen of the said city of Columbia.

"6. That the Mayor of the said city of Columbia is a salaried officer, but was made so by the action of the City Council, and has been paid out of the City Treasury for years past.

"7. That at the election held on the 5th day of April in the current year, the Managers of said election received a considerable number of votes, though not sufficient to overcome the majorities, from persons residing within the territory recently, and within less than sixty days before the said election, annexed to the corporate limits of the city, said persons claiming, upon the ground solely of that residence, the right to vote at said election.

"8. That on the 6th day of April in the current year, the said acting Mayor and Aldermen were served with a written paper by many of the citizens, corporators and electors of the city of Columbia, subscribed, contesting the validity of the election of all the persons reported by the Managers as having received the highest number of votes cast for the said offices of Mayor and Aldermen, and charging the Managers of said election with illegal acts in the conduct of the same; and that after due examination and investigation of the charges contained in said written paper, the said acting Mayor and Aldermen, on the 12th day of April, A. D. 1870, did declare and announce, as the result, *in fact only*, of said election, that the plaintiffs above named had received the highest number of votes for the said offices of Mayor and Aldermen of the said city, but that their said alleged election was invalid *in law*, for the reasons expressed in the written paper subscribed by the said acting Mayor and Aldermen announcing the result *in fact* of said alleged election and the grounds upon which they decided the same to be illegal; of which paper, subscribed by said acting Mayor and Aldermen, a copy is hereunto annexed.

"9. That no sentence of amotion from office has ever been pro-

nounced against the said acting Mayor and Aldermen of the said city of Columbia, or any of them, nor has any proceeding for that purpose ever been instituted.

"It is also mutually agreed between the parties to this controversy, that the original papers containing the protest, the declaration of the election and the admissions of counsel, may be referred to on the hearing of this case.

"It is further mutually agreed between the parties to this controversy, that the several Acts of the General Assembly referred to in the foregoing statements of the case agreed upon, may be referred to on the hearing of this case as if the same had been set forth, at length, in the foregoing statement, but none of the admissions herein contained are, in anywise, to affect either party or to be regarded as made, except for the purpose of this submission of this controversy.

"The questions submitted to the Court upon this case are as follows:

"1. Was the election held under the Act of February 26, 1870, a valid election?

"2. Are the plaintiffs entitled, under said election, to immediate possession of the said offices?

"If the first and second questions now submitted are answered in the affirmative, judgment is to be rendered in favor of the parties plaintiff.

"If one or both of said questions are answered in the negative, judgment is to be rendered in favor of the parties defendant."

*Tradewell, Chamberlain,* for plaintiffs, submitted the following points and authorities:

1. The legislative power of the State, subject only to the limitations of the Constitutions of the State and the United States, is absolute, and cannot be controlled by the Courts.—State Const., 1868; Const. of United States; Paley's Moral Philos., Pt. II, p. 185; Smith's Com. on Const. and Stat. Constr., 239, and authorities there cited, and pp. 259, 260; *Bowman, et al.,* vs. *Middleton,* Bay, 232; *Stark* vs. *McGowan,* 1 N. & McC., 397.

2. Neither the Constitution of the State or of the United States contains any restriction upon the power of the Legislature over the corporation of the city of Columbia.—Commissioners' Act of 1786: 4 Vol. S. L., 751; 5 Vol. S. L., 318; 5 Vol. S. L., 437; Act of incorporation of town of Columbia: 5 Vol. S. L., 505; 8 Vol. S. L.,

351; 6 Vol. S. L., 103; Act of incorporation of city of Columbia: 12 Vol.. S. L, 333; Acts of 1854; Acts of 1858, p. 719; Acts of 1868, Spec. Ses., p. 106; Acts of 1869–'70, p. 354.

3. The city of Columbia is a public municipal corporation, created by the Statutes of the State for political purposes, and, therefore, with its Mayor and Aldermen, created by the same authority, is subject to change, modification or abolition, according to the pleasure of the Legislature; in no sense partaking of the nature of a contract.—*Hope* vs. *Deadrick*, 8 Humph., 1; *Nichols* vs. *Mayor, et al.*, 9 Humph., 252; Abbott's Dig. Law Corp., pp. 291, 592; Cooley's Const. Lim., pp. 191, 192, 193, and note 2, on p. 192; 2 Kent Comm., 305, 352; *Dart. Coll.* vs. *Woodward*, 4 Wheat., 418, 562, 564, 625, 629, 693, 694; *East Hartf.* vs. *East Hartford Bridge Co.*, 10 Howard, 511, 534; *Charles R. Bridge* vs. *Warren Bridge*, 11 Peters, 538; *Satterlee* vs. *Matthewson*, 2 Peters, 413; *Watson* vs. *Mercer*, 8 Peters, 110; *Gray* vs. *Portland Bank*, 3 Mass. R., 363; *Com.* vs. *Bird*, 12 Mass. R., 443; 3 Parsons on Contr., 529; *People* vs. *Morris*, 13 Wend., 325; *Philadelphia* vs. *Fox*, Opinion of Court by Sharswood, J., Law Times for March, 1870, p. 80.

4. CONCLUSION.—The Act of the General Assembly, of February 26, 1870, entitled "An Act to alter and amend the charter and extend the limits of the city of Columbia," is constitutional, the election held thereunder for Mayor and Aldermen was a valid election, and the plaintiffs are entitled to the immediate possession of those offices.

*Rhett, Pope, Carroll*, for defendants.

Sept. 30, 1870.   The opinion of the Court was delivered by

WILLARD, A. J. The parties to this suit have united in submitting the controversy to this Court, under Sec. 389 of the Code of Procedure. The formal remedy is in the nature of *quo warranto*. Section 389 contains the following language: "Parties to a question in difference which might be the subject of a civil action, may, without action, agree upon a case containing the facts upon which the controversy depends, and present a submission of the same to any Court which would have jurisdiction if an action had been brought." If this Court can adjudicate this case, it is authorized, by the same Section, to give judgment according to the right of the parties, and, if the plaintiffs would, in a formal proceeding, be enti-

tled to judgment of ouster, that judgment can be rendered in the present case.

The question of jurisdiction, though not pressed, was mooted upon the argument, and it is proper that it should be here considered. The right to adjudicate the case, in its present form, depends upon whether the "question in difference" is "the subject of a civil action." Before the Code, civil actions did not, in a technical sense, include proceedings by *quo warranto*. Section 443 abolishes the writ of *quo warranto*, and proceedings by information in the nature of *quo warranto*, and provides, instead thereof, "that the remedies heretofore obtainable in those forms may be obtained by civil actions." The Constitution (Art. IV, Sec. 4,) declares that the Supreme Court "shall always have power to issue writs of injunction, *mandamus, quo warranto, habeas corpus*, and such other original and remedial writs as may be necessary· to give it a general supervisory control over all other Courts in the State."

Under this grant of jurisdiction, it is to be considered, whether Section 443, so far as it abolishes the writ of *quo warranto*, is operative as it regards the jurisdiction of the Supreme Court. If the effect of Sect. 4, Art. IV, of the Constitution was to perpetuate the particular forms of legal proceeding particularized in it, then the Legislature could abolish them, if at all, only under Sec. 3, Art. V, of the Constitution, which provides, among other things, "that justice may be administered in a uniform mode of pleading, without distinction between law and equity, they (the Legislature,) shall provide for abolishing the distinct forms of action, and, for that purpose, shall appoint some suitable person or persons, whose duty it shall be to revise, simplify and abridge the rules, practice, pleadings and forms of the Courts now in use in this State."

It is clear that it was not the intent of Sec. 4, Article IV, of the Constitution, to place the writs enumerated beyond the power of the Legislature to abolish them, as to form, and substitute other forms in lieu thereof, so long as the grant of jurisdiction in such cases remains unimpaired in the Supreme Court. The primary end and intent of this Section was to confer upon the Supreme Court general revisory power over the proceedings of other Courts, and original jurisdiction in certain specified cases. The writs of *mandamus, quo warranto* and *habeas corpus* are referred to as a convenient and usual means of marking out the limit of jurisdiction intended for the Supreme Court. In legal parlance, the writ or form of action is allowed to personate and stand for the jurisdiction to

which it relates to avoid inconvenient particularization. It is in this sense that the terms are here used. Such writs were then in common use, and furnished the common forms of expression for conveying the sense thus intended by this Section. To separate the expression "shall always have power to issue writs," &c., from the context, might create a doubt whether the conservation of the writ, or the extent of the powers of the Supreme Court, was the object in view, but read by the context it is clear that the technical value of the writs, as remedial means, was not the subject of consideration, but substantial rights to be protected by lodging certain judicial powers in the Supreme Court was the single end contemplated. There is no direct expression of an intent to limit the ordinary powers of the Legislature in respect to moulding the forms of procedure in the Courts. To raise such an intent by implication would be open to the objection of depriving the Legislature of customary and convenient powers, when no such implication is essential to effectuate either the particular or general intent of the Constitution. Such a construction would be especially objectionable in view of the provisions of Sec. 3, Art. V, making it the duty of the Legislature to enter upon a thorough reorganization of the remedial system of the State.

The argument that can be urged with greatest force against this position is, in substance, that conferring power to issue certain writs "always" implies that the writs must *always* exist, otherwise they would not be issued. This would be a fair argument, if the actual issuing of mandates of a particular form, and attested in a particular manner, was intended; but as the expressions are used as terms of art, covering larger and more substantial ideas, they are not subject to such nice verbal criticism.

Although the Legislature could change the form of the remedy, the jurisdiction of this Court remains based upon the terms of the Constitution. This Court having, therefore, jurisdiction of an action based upon the rights set forth in the submission, the present case is properly before us, and we will proceed to dispose of the points made.

The plaintiff, Alexander, claims the office of Mayor of Columbia, and the other plaintiffs the offices of Aldermen of said city, under an election held on the second Tuesday of April, 1870, in pursuance of an Act of the Legislature, passed February 26, 1870, entitled " An Act to alter and amend the charter and extend the limits of the city of Columbia."

The defendants aver possession of the same offices, claiming in virtue of due election under the Act entitled " An Act to provide for the election of the officers of incorporated cities and towns in the State of South Carolina," passed September 25, 1868, and that the terms for which they were elected have not yet expired.

The case propounds the following questions for the judgment of · the Court: 1st. " Was the election held under the Act of February 26, 1870, a valid election?" 2d. " Are the plaintiffs entitled, under such election, to immediate possession of said offices?"

The answer to these questions depends upon the power of the Legislature to oust the defendants from their offices before the expiration of the terms to which they were originally elected, and the expression of such an intent in the Act. These subjects will be considered in the order just stated.

I. If.the defendants have a legal right to the offices held by them for the remainder of the term to which they were originally elected, as against the legislative power, it must arise from one of the considerations, either that they are to be regarded as having a property in such offices, or a vested interest under contract with the State Government, the obligation of which it is not in the power of the Legislature to impair, under the Constitution of the United States.

It was very properly conceded on the argument that no such contract existed as is contemplated by the Constitution of the United States in the clause prohibiting the States from passing laws impairing the obligation of contracts. The case is, therefore, narrowed down to the single question whether the defendants have such a property in their offices as to be beyond the power of the Legislature to destroy it.

An office implies three things: first, power to act in the exercise of the rights of another; second, an obligation to exercise this power within and for the purposes intended in its creation; and, third, a right to compensation. Offices differ in the nature of the power, the uses to which it is to be employed, and the incidents attached to it by the Act creating it, or by the law of the land.

The most important division of powers, according to their nature, is into political and personal. Communities exercising sovereign authority, or the right to control the action of individuals for the promotion of the common good, are said to be possessed of political powers. Each individual, on the other hand, is born to the possession of a certain natural capacity or liberty, in the exercise of

which powers arise that are recognized by the law. In the absence of a better expression, these have been termed personal. Another and familiar division of powers illustrates the nature of the distinction based upon the uses to which the powers are devoted—it is that between public and private powers. Communities, for governmental purposes, having the capacity of holding property, exercise proprietary rights, in the course of which agents are appointed and empowered to control the application of such property to public uses. Authority of this character can hardly be called political, although it is clearly public.

The power of a magistrate, in the enforcement of the laws, clearly differs in nature from that of an engineer in charge of a State work. While no such difference, in the nature of the power exercised, exists between the engineer on a State work and one conducting a similar private enterprise, still the fact, that one is intended to enure to the public use, and the other to private uses, fully sustains the distinction between public and private powers apart from the idea of a political character.

It will be unnecessary to do more than merely allude to a class of powers that partake more or less of all the attributes that have been named in this connection, among which the most conspicuous are franchises, both public and private. As it regards the difference between offices, as to the incidents attached to them by their creation or the law of the land, something will be said hereafter in connection with some of the incidents of political offices as existing in England.

The present case involves exclusively public offices erected for the exercise of political powers, for the powers of the Mayor and Aldermen of a city appertain to this class. It follows, from the foregoing, that if the defendants have any proprietary rights attaching to the offices claimed by them, such rights must arise either from the nature or uses of the power involved, from the character of the obligation for its due exercise resulting from the possession of such power, or from the claim to compensation incident thereto.

It is of the nature of powers to be revocable at the will of the creator. To this, political powers are not an exception. It is not, however, an invariable rule. The true distinction is, that when the beneficial use of the power is in the grantor, the power is revocable at his pleasure; when the beneficial use is in the one holding the power, or in a third person, the power is not usually revocable. Trustees, guardians, executors and administrators possess powers in

the strictest sense, but subject to incidents of so peculiar a nature that they are not ordinarily classed among powers, technically considered.

Political powers always enure to the beneficial use of the political community, as such, exclusively, and never to the exclusive use of private persons. This results from the fact that government exists for the common benefit, and its powers cannot be appropriated to the exclusive benefit of individuals, except by violence, destructive of its principles. It therefore follows that political powers are revocable at the will of the government communicating them. In *Butler* vs. *Pennsylvania*, 10 How., 402, the question was as to the validity of a statute reducing the salary of the Canal Commissioner, during the term for which he was appointed, below the amount fixed by law at the time of his appointment. The Court based its judgment upon the broad ground of the power of the government to the absolute control of its agents, either by removing them or changing their duties or compensations at its own pleasure. Judge Daniels says, (p. 416), "the selection of officers, who are nothing more than agents, is for the effectuating of such public purposes, is matter of public convenience or necessity, and so too are the periods for the appointment of such agents; but neither the one nor the other of these arrangements can constitute any obligation to continue such agents, or to re-appoint them after the measures that brought them into being shall have been found useless, shall have been fulfilled, or shall have been abrogated, as even detrimental to the well being of the public." Again he says, "it follows, then, upon principle, that in every perfect or competent government there must exist a general power to enact and to repeal laws, and to create and change or discontinue agents designated for the execution of those laws. Such a power is indispensable for the preservation of the body politic and for the safety of the individuals of the community." He holds that the organic law is the only check upon this power; that the tenure of an office created for the public use does not fall within the class of vested private rights, vested under the Constitution of the United States, but, on the contrary, he adds, "they are functions appropriate to that class of powers and obligations by which governments are enabled, and are called upon, to foster and promote the common good; functions, therefore, which governments cannot be presumed to have surrendered, if, indeed, they can, under any circumstances, be justified in surrendering them." The Court sustained the validity of the law of Pennsylvania in question. 1 Parsons on Cont., 530.

The nature and incidents of political powers have been frequently considered in reference to the rights and obligations of municipal corporations. Inasmuch as the character of political power does not undergo change in the hands of the agent for its exercise, the decisions on such questions, in the case of municipal corporations, are applicable in whatever hands such powers may be placed.

In *Dartmouth College* vs. *Woodward*, (4. Wheat., 518,) Judge Story presents the distinction between public corporations possessed of political powers, such as cities, &c., and public corporations not possessing such powers, as a bank created and controlled by the government for its own uses. He also adverts to the fact that political corporations may have proprietary rights united to their political powers.

The case of a municipal corporation having such proprietary rights—and all have more or less—is a strong one for holding that political powers may become vested; for it is evident that the possession and right to use such political powers may be of great value in connection with the proprietary interest of the corporate body. Such a case is much stronger for the application of such a doctrine than the case of a public officer whose proprietary rights are independent of, and in no way connected with, the functions of his office. Much importance should, therefore, be attached to the views of the Courts in respect to the character and attributes of political powers when lodged in the hands of public political bodies.

In *East Hartford* vs. *Hartford Bridge Company*, (10 How., 511,) Judge Woodbury, speaking of the Legislative control over public corporations, says: " When not restrained by some constitutional provision, this power is inherent in its nature, design and attributes, and the community possesses as deep and paramount an interest in such powers remaining in and being exercised by the Legislature, when the public progress and welfare demand it, as an individual can, in any instance, possess in restraining it." In this case it was held that a city, after having established the grade of a street, could alter it, notwithstanding it would cause damage to the property that had been conformed, to the original grade. The power in question was held to be political, and, therefore, incapable of being exhausted in its exercise. In the *People* vs. *Morris* (12 Wen., 325,) it was held that the Legislature could deprive a village corporation of the power to grant licenses conferred by its charter. Judge Wilson, in an opinion, remarkable for its research and clear reasoning, examines the question of the rights and immunities of public bodies

very fully, and concludes that the power to grant licenses is not one that can become vested in a public body enjoying it by the grant of the Legislature, it being in its nature "wholly political." He holds that political powers cannot become vested rights, as against the Government, in any individual or body of men, but are always "public trusts."

In *Girard* vs. *Pennsylvania*, 7 Wall., 1, it was held, that notwithstanding the city of Philadelphia was, by the will of Stephen Girard, made trustee for charitable uses, still the power of the Legislature to remodel the city government, by extending its territorial limits and admitting the inhabitants of the surrounding country, brought within the new city limits, to a participation in all the rights and privileges enjoyed by the old city, was so complete and entire that the new city was capable of succeeding to the trust. Here was an instance where powers derived from a private source, followed the political powers granted by the Legislature, and, with them, became subject to the power of amendment and repeal remaining in the Legislature—a strong assertion of the doctrine under consideration.

*Hoke* vs. *Henderson*, 4 Dev., N. C. R., 1, holds the contrary doctrine, but is without the support of reason or authority. Misapprehension of the English doctrine on this subject has frequently given rise to erroneous views of the powers of political bodies. Judge Nelson, in *People* vs. *Morris*, 12 Wen., 325, points out the true view of this subject. He comments upon the origin and character of the idea of the inviolability of municipal charters prevailing in that country, and concludes that it is only as against the prerogatives of the Crown, and not as against the power of Parliament, that such inviolability has been asserted. After referring to the limitations put upon the power of the Crown, he says: "The right or power of Parliament, in England, and of the Legislature here, to interfere with these bodies, created as auxiliaries to be employed in the government of the State, would present a different question. The doctrine that political power is inalienable, and cannot enure to the exclusive use of an individual, or body of men less than the whole political community, is not violated by holding municipal charters inviolable as against the Crown. It is merely one of the incidents impressed upon the office by the feudal doctrine of prerogative, not affecting the fundamental principle in which the delegation of political powers rests." · Again, Judge Wilson says, towns, counties, cities and villages "are, severally, political institutions, created to

be employed in the internal government of the State. There is no contract between the government and the governed, for but one party is concerned—the public; and the individuals upon whom the powers and privileges are conferred are mere trustees, who hold and exercise such powers for the public good." Finally, he says, "we know of no vested rights of political power in any body of citizens except those conferred by the Constitution."

The authorities cited above, as well as many others of the highest authority, sustain the proposition already advanced, that political powers always enure to the beneficial use of the political community, as such, exclusively, and are revocable at the will of the Government communicating them.

If the idea of property cannot attach to the power appertaining to a political office, neither can it attach to the obligation that results from the possession of such political power. Such an idea is inconsistent on its face, for if any one has a property in an obligation, it is not the one who is bound by the obligation, but he who may enforce it.

Then there remains only one more incident of an office to be considered in connection with the idea of a property in it, namely, the right to compensation. Where the compensation of an office consists of fees, perquisites, tolls and the like, there would be a show of ground for ascribing to it the character of property. Even in such a case, the contrary was held in the well-considered case of *Connor* vs. *The Mayor*, &c., (1 Selden, N. Y., 285.) When, on the other hand, that compensation is a salary, no idea of property can attach. Whether such compensation can be claimed prospectively, depends upon whether the employment is a contract within the constitutional definition. Chief Justice Ruggles, in *People* vs. *Connor*, says : "The prospective salary and other emoluments of a public office are not the property of the officer, nor the property of the State; they are not property at all. They are like daily wages earned, and which may be earned." Again, he says: "The right to the compensation grows out of the condition of the service, and not out of any contract, between the Government and the officer, that the services shall be rendered by him." The authority of *Butler* vs. *Pennsylvania* is to the same point.

If, therefore, it appeared that all the defendants were salaried officers, it would not help their case; though the fact appears to be that the Mayor is the only one of the defendants entitled to compensation. It may be remarked, also, that a fixed right to the

compensation of the office at most would only give rise to a claim to damages, to be recovered by petition to the Legislature for the loss of the office, but under no circumstances confers a right to continue in the performance of its duties against the will of the Legislature. But it is clear, upon reason and authority, that the right to compensation is dependent on the right to exercise the office, instead of the latter being dependent on the former, and that, as the functions of the office have been removed from the defendants, there is nothing in their hands from which a right to · compensation can spring, even if attached by law to the office.

It is clear, therefore, that the Legislature had full authority to withdraw from the defendants their powers as Mayor and Aldermen in any mode that might seem most advisable, and it only remains to see whether they have, in fact, done so. The Act of 1870 extends the territorial limits of the city of Columbia, and provides for the holding of an election by the community to fill the offices of Mayor and Aldermen. It is not said at what time the officers elected shall enter upon their duties; but, it is obvious that the Legislature deemed the election of a new board as appropriate, in view of the increase of the territory and inhabitants of the city. The defendants contend that the Act ought to receive such construction that the new Mayor and Aldermen should not be admitted to the offices to which they have been elected until 1872, the end of the term for which the defendants were elected. The effect of this construction of the Act would be, that while the law stands in its present form, the election of Mayor and Aldermen would always precede their entering upon the duties of their office by two years. Such a derangement of the elective principle cannot be ascribed to the intention of the Legislature without much clearer expressions than exist in the present case. As the Act leaves to inference when the newly elected officers shall enter upon their duties, that period must be ascertained in accordance with the charter and customary practice of the city.

It was contended, on the argument, that the right of the plaintiffs depended upon the power of amotion. As the Act removing the defendants was not a corporate Act, but the Act of the Legislature, the doctrine of amotion is wholly inapplicable to the present case. Much of the argument was based upon the idea that the removal of the defendants could only be accomplished through the exercise of judicial power, and reference was made to the principles embodied in the Constitution and in the common law,

checking the undue exercise of judicial power; but it is an entire misapprehension to refer the authority in question to this class of judicial powers. As the removal of the defendants involved no loss of property or of vested rights, it called for the exercise of political powers alone.

The plaintiffs have established their immediate right to the offices claimed by them respectively.

Moses, C. J., concurred.